IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| IN RE: | ) | Chapter 12 |
| | ) | |
| Jerome Toppmeyer | ) | |
| Barbara Toppmeyer | ) | Case No. 11-30698 |
| | ) | |
| Debtors. | ) | |

<u>Opinion</u>

This case is before the Court on the debtors' Objection to the Claim of Barry Seiler and

Ronald Conrad ("Creditors"), the debtors' Motion to Value Claim Secured by Property of the

Estate, and the Chapter 12 Trustee's Objection to Confirmation of the debtors' Amended Plan

#1.  In resolving these matters, the Court must determine 1) the proper date of valuation; 2) the

value of the property; 3) whether the Chapter 12 debtors may strip down an *in rem* lien on an

undivided 1/3 interest in their residence and five acres of land; and 4) what happens to any

unsecured deficiency.

*Facts*

On May 25, 2004, judgment was entered against Alan Toppmeyer, the debtors' son, and

in favor of Creditors in a state court action brought in Calhoun County, Illinois.[1]  At the time of

judgment, Alan Toppmeyer owned an undivided, one-third interest in property in Calhoun

County.  His parents owned the remaining property interest.  On May 27, 2004, Creditors

recorded a memorandum of judgment against Alan Toppmeyer, creating a valid lien on his one-

third interest in the property.  On December 10, 2004, Alan Toppmeyer deeded his undivided,

---

[1] The original judgment amount was $412,359.28.  This was later modified and reduced to $365,701.55  The amount owed was reduced further after the sale of some of Alan Toppmeyer's real and personal property.

one-third interest in the property to his parents, the debtors.  Subsequent to the transfer, he filed

bankruptcy pursuant to Chapter 7 and obtained a discharge extinguishing his personal liability on

the judgment lien.

The one-third interest in the property remained subject to an *in rem* claim.  On January

14, 2011, a Decree of Foreclosure was entered in Calhoun County and recognized that, by virtue

of the judgment, Creditors had a valid lien on a one-third interest in the debtors' property.  The

Decree ordered a sale of the one-third interest in the property to pay Creditors' judgment lien but

specified that:

> The sale of the one-third interest in the property is subject to the existing and prior
> mortgage of ABN Amro Mortgage Group, Inc. [now CitiMortgage], and subject
> to any claim of Jerome Toppmeyer and Barbara Toppmeyer for any right they
> may have for contribution of any payments to ABN Amro Mortgage Group, Inc.,
> which claim has not been adjudicated in this proceeding.

On March 30, 2011, the debtors sought bankruptcy relief under Chapter 12.  In their

original Schedule C, the debtors sought to claim a $30,000.00 homestead exemption.  Creditors

objected, arguing that as the debtors were not the owners of the one-third interest in the property

as of the date of recording the judgment lien, the exemption did not attach until after the

recording of the judgment lien and was subject to it.  On July 13, 2011, Creditors filed a claim

based on the judgment lien and the January 14, 2011, Decree of Foreclosure for $225,668.98.

The debtors objected to the claim arguing that the value of the secured claim was equal to the

value of a one-third interest in the debtors' house and five acres, minus the mortgage, and any

claim of contribution by the debtors.  The debtors argued that they were not personally liable for

any amount in excess of the allowed, secured claim.

At hearing on September 30, 2011, the Court sustained, in part, Creditor's objection to

the debtors' exemption but stated that the debtors shall have an exemption subject to the prior

mortgage and judgment liens.  The Court also partially overruled the debtors' objection to

Creditors' claim stating that, "[t]his claim shall be allowed specifically as to the 1/3 interest in

the debtors' house and five acres.  No claim, however, exists against the individual debtors."

*Court's Order*, September 30, 2011, *Doc. #67*.  The Court delayed any ruling on the amount or

extent of the claim.

On May 15, 2012, the Court heard oral arguments and testimony regarding the debtors'

Objection to Claim and Motion to Determine Value.  The parties were given additional time to

submit authority regarding the appropriate date to determine valuation and whether the debtors

may strip down the *in rem* claim.  The matters were taken under advisement.


***Arguments of the Parties***

***Valuation***

The parties disagree on when the property in question should be valued.  The debtors

argue that the value of their property should be determined as of the date of the hearing.  The

evidentiary hearing on the value of the debtors' property was held on May 15, 2012.  Creditors

argue that the value of their secured interest should be fixed at the date of the bankruptcy

petition.  The date of the filing of the bankruptcy petition is March 30, 2011.

This Court agrees with Creditors.  "It is now well settled that a secured creditor's interest

in property is determined as of the date of the filing of the petition for relief.  Post-petition

appreciations in the value of property, as well as after acquired property, inure to the benefit of a

debtor under the fresh start principle."  *U.S. v. Zlogar*, 126 B.R. 53, 57 (N.D.Ill. 1991) (quoting

*In re Frengel*, 115 B.R. 569 (Bankr.N.D.Ohio 1989)); *see also In re Driscoll*, 57 B.R. 322, 327

(Bankr.W.D.Wis. 1986) *overruled on other grounds* ("Secured status is determined as of the date

of the filing of the bankruptcy petition."); and *In re Sarno*, 463 B.R. 163, 166 (Bankr.D.Mass. 2011) (quoting *In re Abdelgadir* 455 B.R. 896, 903 (9th Cir. BAP 2011)) ("A creditor's right to payment, whether it later is deemed secured or unsecured depending on the value of the collateral, is fixed as of the petition date.")

As to the valuation method, "[p]roperty retained for the debtor's use must be based upon replacement value." *In re Watkins*, 240 B.R. 735, 741 (Bkrtcy.C.D.Ill. 1999) (citing *Associates Commercial Corp. v. Rash*, 117 S.Ct. 1879 (1997)). "Replacement value is equivalent to fair market value, or the value a willing purchaser in the debtor's business would pay for a like property." *Id*. (citing *Rash*, 117 S.Ct. 1879).

The Court heard testimony regarding the fair market value of the debtors' property and both parties were given a chance to present evidence and expert testimony. The debtors' expert, Robert Hartmann, is a certified general appraiser in Illinois. He testified that he performs 200-350 appraisals a year. After an interior and exterior review of the property, Hartmann appraised the five acres and buildings at $150,000.00. Hartmann's appraisal indicated that he reviewed a prior appraisal, done in 2009, that valued the property at $113,000.00. Hartmann's appraisal of the entire property ($150,000.00) minus the first mortgage owed to CitiMortgage, Inc. ($61,057.81[2]) equals $88,942.18. When discounted to the value of the one-third interest Creditors hold in the property, Creditors' secured claim would be $29,350.92.

Creditors' expert, Homer Henke, is a licensed auctioneer and real estate broker. He testified that, based on current market conditions, the debtors' property would sell for $245,000.00 - $255,000.00. Subtracting the mortgage and discounting to the value of the one-third interest, Creditors' secured claim would be $60,700.92 - $64,000.92.

---

[2] See *Debtors' Exhibit #2* – Letter from CitiMortgage, Inc., dated December 1, 2011.

Although they differed on the overall value of the property, the experts agreed on several points.  Both of the expert witnesses testified on the difficulty of selling an undivided one-third interest in real property.  Both witnesses testified that there is limited access to the property because of its location, particularly when neighboring rivers flood.  Finally, both experts testified that maintenance on the property had been deferred.  The debtors' expert testified that only two rooms of the residence had heat.

The Court is mindful of the difference of opinion between the experts' valuation of the property.  Because of this, the Court disagrees with both experts' opinions and, instead, adopts the county tax assessment.  The Court notes that there is no evidence that the debtors ever challenged the county's assessment of their property.  As explained in the debtors' exhibit, the current combined assessed value on the improvements and home site is $164,235.00.  Taking this value, subtracting the current balance of the first mortgage, and discounting to the value of the partial interest, results in Creditors' claim having a current value of $34,048.47.

### *Lien-Stripping and the Treatment of the Unsecured Portion of Creditors' Claim*

It is unnecessary to consider the parties' argument on whether the Chapter 12 debtors may strip down an *in rem* lien on the undivided one-third interest in the property or what happens to any unsecured deficiency.  As explained previously, the original memorandum of judgment was *only on a one-third interest in the property*.  Further, the Calhoun County state court held that, by virtue of the judgment against Alan Toppmeyer, Creditors have a valid lien on *a one-third interest in the debtors' property* subject to the prior mortgage and any claim the debtors may have for contribution of payments.  There is no evidence in the record to suggest that any party challenged the Decree of Foreclosure.  As it was not challenged, it is a final judgment and has preclusive effect.  As such, the parties are barred from challenging it now.

5

*Schlangen v. Resolution Trust Corp.*, 934 F.2d 143 (7ᵗʰ Cir. 1991) (quoting *Torres v. Rebarchak*, 814 F.2d 1219, 1222 (7th Cir. 1987)) ("In Illinois, a final judgment on the merits rendered by a court of competent jurisdiction bars the same parties or their privies from relitigating issues that were raised or could have been raised in the prior action.")

Furthermore, under the Rooker-Feldman doctrine [3], this Court lacks jurisdiction to examine the judgment's merits. *In re Heartland Food and Dairy Distributors, Inc.*, 253 B.R. 32, 38 (Bankr.S.D.Ill. 2000). The Rooker-Feldman doctrine holds that inferior federal courts lack jurisdiction to review final decisions of state courts. *Id.* (citing *Levin v. Attorney Registration and Disciplinary Comm'n of Supreme Court of Illinois*, 74 F.3d 763, 766 (7th Cir. 1996)); s*ee In re Singleton*, 230 B.R. 533, 536-37 (B.A.P. 6th Cir. 1999). Rooker-Feldman establishes that the losing party in a state court lawsuit cannot collaterally attack that court's ruling in federal court. *Id.* at 39. Rather, the litigant's remedy lies in the state court system and its appellate process. *Id.* (citing *In re Herrera*, 194 B.R. 178, 186 n.3 (Bankr.N.D.Ill. 1996)).

Even assuming, *arguendo*, that the state court judgment was not preclusive, this Court's previous Order has similar binding effects. In their brief, Creditors object that the debtors never raised an objection to their filed claim. This is untrue. The debtors objected to Creditors' claim on July 29, 2011. As previously stated, the debtors' objection was overruled *as to a one-third interest in the debtors' real property. Court's Order*, September 30, 2011, *Doc. #67.* In ruling on the objection, the Court specifically allowed the claim as to the one-third interest in the debtors' house and five acres. The Court found that no claim existed against the individual debtors. Again, no party challenged this Order and it now has preclusive effect.

---

[3] "The doctrine is 'generally stated as precluding lower federal courts from exercising appellate jurisdiction over state court judgments, even when the state court judgments are erroneous.'" *In re Landreth Lumber Co.* 393 B.R. 200, 205 (Bankr.S.D.Ill., 2008) (citing Susan P. Johnston, *Application of the Rooker–Feldman Doctrine in Bankruptcy Cases*, 15 Norton Journal of Bankruptcy Law and Practice 341, 344 (2006)).

Because of the prior judgment of the state court limiting Creditors' claim, it is unnecessary to discuss the strip down of the *in rem* lien.  No lien *has ever existed* above the one-third interest described in the Decree for Foreclosure.  This was recognized in this Court's previous Order.  Further, as recognized by both the state court and this Court, the debtors were never personally liable on the lien.  Therefore, the inclusion of any deficiency over the allowed secured claim in the Chapter 12 plan is unnecessary.  Requiring the debtors to make payment on the unsecured portion of the claim would, in effect, expand the relief granted by the state court in the Decree of Foreclosure and impose personal liability on the debtors for the lien for the first time.  This would reward Creditors with a right of recovery that they never enjoyed under the original obligation.  Because no lien has ever existed on any part of the debtors' property other than the undivided, one-third interest formerly held by their son and because the debtors have never had *in personam* liability, the debtors need not address any unsecured deficiency in their plan.  The claim is limited to the amount of the secured claim as determined by the state court and the valuation found herein – which amount is $34,048.47.

### Conclusion

For the reasons stated above, the Court finds that the proper valuation date is the petition date of March 30, 2011, and Creditors' claim is limited to one-third of the value of the debtors' property, $164,235.00, minus the outstanding mortgage claim.  The Court further finds that, in compliance with the state court's Decree for Foreclosure and its own earlier Order, while the secured portion must be addressed in the debtors' plan at the value listed above, any unsecured deficiency need not be addressed as it is not owed by the debtors.  The Trustee's Objection to Confirmation shall be set for further hearing and considered in light of this Opinion.

SEE ORDER ENTERED THIS DATE.

ENTERED:  August 21, 2012

/s/ Laura K. Grandy

UNITED STATES BANKRUPTCY JUDGE/4